IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LINDA DAVILA<br>5034 Huber Road<br>Norwalk, Ohio 44857<br><br>Plaintiff,<br><br>v.<br><br>TRILOGY HEALTH SERVICES, LLC<br>Forum Office Park<br>303 N. Hurstbourne Parkway, Suite 200<br>Louisville, Kentucky 40222<br><br>PLEASE ALSO SERVE<br>STATUTORY AGENT<br>Corporation Service Company<br>50 West Broad Street Suite 1330<br>Columbus, Ohio 43215<br><br>-and-<br><br>TRILOGY MANAGEMENT SERVICES, LLC<br>Forum Office Park<br>303 N. Hurstbourne Parkway, Suite 200<br>Louisville, Kentucky 40222<br><br>PLEASE ALSO SERVE<br>STATUTORY AGENT<br>Corporation Service Company<br>50 West Broad Street Suite 1330<br>Columbus, Ohio 43215<br><br>-and-<br><br>TRILOGY HEALTH SERVICES LLC<br>The Willows of Bellevue<br>101 Auxiliary Drive<br>Bellevue, Ohio 44811<br><br>-and- | ) | CASE NO.<br><br>JUDGE:<br><br>**<u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>**<br><br>**(Jury demand endorsed herein)** |



CHRISTINE GREILICH )
101 Auxiliary Drive )
Bellevue, Ohio 44811 )
)
Defendants. )

**PARTIES**

Plaintiff, Linda Davila, by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

1. Davila is a resident of the city of Norwalk, Huron County, state of Ohio.

2. Defendant Trilogy Management Services, LLC ("Trilogy Management") is a Delaware limited liability company with its principal place of business in the city of Louisville, state of Kentucky.

3. Defendant Trilogy Management, at all times listed herein, operated a residential medical care facility in Sandusky County located at 101 Auxiliary Drive, Bellevue, Ohio 44811.

4. During all times material to this Complaint, Trilogy Management was an "employer" within the meaning of R.C. § 4112.01(A)(2).

5. At all times material to the Complaint, Trilogy Management was an "enterprise" within the meaning of 29 U.S.C.A § 203(r), in that they performed activities in connection with the operation of a medical residential care facility, and were engaged in related activities performed through unified operation of common control for a common business purpose, and, at all times hereinafter mentioned, was an enterprise within the meaning of section 3(r) of the Fair Labor Standards Act.

6. During all times material to this Complaint, Trilogy Managment was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d); an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1) and R.C. § 4111.03(D).

The Employee's Attorney.TM

SPITZ LAW FIRM

7. Defendant Trilogy Health Services, LLC ("Trilogy Health") is a Delaware limited liability company with its principal place of business in the city of Louisville, state of Kentucky.
8. Defendant Trilogy Health, at all times listed herein, operated operated a residential medical care facility in Sandusky County at 101 Auxiliary Drive, Bellevue, Ohio 44811.
9. During all times material to this Complaint, Trilogy Health was an "employer" within the meaning of R.C. § 4112.01(A)(2).
10. At all times material to the Complaint, Trilogy Health was an "enterprise" within the meaning of 29 U.S.C.A § 203(r), in that they performed activities in connection with the operation of a medical residential care facility, and were engaged in related activities performed through unified operation of common control for a common business purpose, and, at all times hereinafter mentioned, was an enterprise within the meaning of section 3(r) of the Fair Labor Standards Act.
11. During all times material to this Complaint, Trilogy Health was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d); an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1) and R.C. § 4111.03(D).
12. During all times material to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(d) and O.R.C. § 4111.03(D).
13. Upon information and belief, Defendant Christine Greilich ("Greilich") is a resident of the State of Ohio.
14. Greilich is, and, at all times hereinafter mentioned, was an individual who is a manager at Trilogy Management/Trilogy Health/Willows of Bellevue.

15. Greilich is, and, at all times hereinafter mentioned, was an individual who acted directly or indirectly as an agent in the interest of Trilogy Management/Trilogy Health/Willows of Bellevue, and is an employer within the meaning of R.C. § 4112.01(A)(2).

**JURISDICTION & VENUE**

16. This court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Davila is alleging a Federal Law Claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.
17. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Davila's Ohio Wage Law claims, because those claims derive from a common nucleus of operative fact and are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.
18. This Court has supplemental jurisdiction over Davila's state law claims pursuant to 28 U.S.C. § 1367 as Davila's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.
19. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, because it is the district court for the district, division, and counties within the Defendants operate and conduct business, and within which a substantial part of the events or omissions giving rise to the claim occurred.
20. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

**FACTS**

21. Davila is a former employee of Trilogy Management.
22. Davila is a former employee of Trilogy Health.
23. Davila is a former employee of Willows of Bellevue.
24. Trilogy Management and/or Trilogy Health and/or Willows of Bellevue were employers of Davila.



25. At all times herein, Davila was acting in the course and scope of her employment.

26. Trilogy Management, Trilogy Health, and Willows of Bellevue are hereinafter collectively referred to as Trilogy Defendants.

27. In or about December 8, 2015, Davila began working for Trilogy Defendants at the Willows of Bellevue facility as a Licensed Practical Nurse ("LPN").

28. As an LPN, Davila was involved in patient care.

29. As an LPN, Davila was an hourly, non-exempt employee.

30. While employed with Trilogy Defendants, Davila was routinely required to do work at home after her shift.

31. While employed with Trilogy Defendants, Trilogy Defendants called Davila two to three times per week to demand that she complete her charting off the clock at her home.

32. Throughout his employment, Defendants permitted or suffered Davila to work hours outside of her scheduled hours of work, in excess of forty hours per week.

33. The work Davila performed after hours was greater than *de minimis*, and primarily for the benefit of Defendants.

34. As a result of the work Davila performed after hours, she regularly worked greater than forty hours per week.

35. Davila was not paid one and one-half times his regular hourly rate when she worked more than forty hours in one week.

36. While employed with Trilogy Defendants, Trilogy Defendants deducted thirty minutes per day from Davila's time records if she worked more than ten hours ("Automatic Thirty Minute Deduction").

37. Trilogy Defendants made the Automatic Thirty Minute Deduction, regardless of whether Davila actually took her break.



38. Trilogy Defendants made the Automatic Thirty Minute Deduction with knowledge that Davila worked more than 40 hours per week and was entitled to receive overtime compensation.

39. Trilogy Defendants made the Automatic Thirty Minute Deduction in an effort to avoid paying Davila overtime compensation.

40. Trilogy Defendants knew that the Automatic Thirty Minute Deduction violated overtime obligations imposed by the FLSA.

41. In violating the FLSA, Trilogy Defendants acted intentionally and willfully, and recklessly.

42. In violating the FLSA, Trilogy Defendants acted in disregard of clearly applicable FLSA provisions.

43. In violating the FLSA, Trilogy Defendants acted without a good faith basis in attempting to non-exempt employees to work.

44. During Davila's employment with Trilogy Defendants, she received positive performance evaluations.

45. During Davila's employment with Trilogy Defendants, she received positive feedback from patients regarding the care she provided at the Willows of Bellevue.

46. During Davila's employment with Trilogy Defendants, she received positive feedback from patients' family members regarding the care she provided to residents at the Willows of Bellevue.

47. While employed with Trilogy Defendants, Davila was asked to participate in an employee survey regarding the Willows of Bellevue facility ("Davila Employee Survey").

48. In the context of the Davila Employee Survey, Davila expressed written concerns about patient care and safety at the Willows of Bellevue.



49. In the context of the Davila Employee Survey, Davila confirmed in writing previous verbal reports of patient care and safety that she had made to members of management with Trilogy Defendants.

50. In the context of the Davila Employee Survey, Davila reported that the staffing levels at the Willows of Bellevue were so low as to place the facility out of compliance with required nursing ratios.

51. As result of low staffing levels at the Willows of Bellevue, Davila was routinely working at the facility when there were not enough nurses to provide adequate care for the residents.

52. Davila made a recommendation to management with Trilogy Defendants that the staffing levels could be improved if administrative assistants or medical secretaries could be hired to complete some of the administrative tasks, freeing up more nurses for the floor.

53. Davila made a recommendation to management with Trilogy Defendants to contact employees who were not scheduled to request that they report to work to cover open shifts.

54. Instead of acting on Davila's reports of low staffing levels, management failed to take remedial action to correct the patient/nurse ratios.

55. During her employment, Davila reported a patient elopement.

56. Patient elopement means that a patient left the facility without staff knowledge or assistance.

57. The patient involved in the elopement was paying a premium for a more secure "memory care unit."

58. Despite paying for a room in the memory care unit, the patient involved in the elopement was regularly kept in physical therapy.

59. Despite paying for a room in the memory care unit, Trilogy Defendants failed to place the patient involved in the elopement in the unit.



60. When Davila reported the patient elopement and the circumstances leading to the patient elopement to management, Trilogy Defendants failed to take corrective action.

61. Davila reported that the patient involved in the elopement was very mobile, and the only reason for his placement in a less secure room was to keep the room available for another person who could be charged more.

62. During her employment, Davila was subjected to discrimination and harassment based on the fact that she suffered from a disability.

63. In March of 2017, Davila began having problems with her knee, requiring her to use a crutch.

64. After she began using the crutch, her manager, Greilich, and other managers became critical of Davila.

65. Davila further disclosed to management that she would be requiring medical leave in the fall of 2017, and was banking her vacation time to use for that leave.

66. Nearly immediately after these disclosures, Trilogy Defendants terminated Davila on April 26, 2017.

67. Davila's reports on her survey and to management regarding the unsafe conditions at the nursing facility caused management at the facility to receive less in the way of bonuses due to Davila's survey.

68. Defendants stated reason for Davila's termination was pretext designed to conceal unlawful retaliation for Davila's protected activity in reporting the violations of state and federal staffing regulations for nursing homes.

69. Defendants stated reason for Davila's termination was pretext designed to conceal unlawful discrimination and/or retaliation for Davila's protected activity in requesting a reasonable accommodation for her disability.



70. Defendants stated reason for Davila's termination was pretext designed to conceal unlawful discrimination and/or retaliation for Davila's protected activity in disclosing that she suffered from a disability.

71. As a result of being terminated unlawfully by Defendants, Davila suffered severe emotional distress.

72. As a result of being discriminated against and wrongfully terminated on the basis of her disability, Davila suffered severe emotional distress.

73. As a result of Defendants' conduct, Davila suffered physical illness and emotional distress.

**COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT**

74. Davila restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. During all times material to this Complaint, Davila was not exempt from receiving minimum wage under the FLSA because, inter alia, she was not an "executive," "computer," "administrative," or "professional" employee, as those terms are defined under the FLSA. See 29 C.F.R. §§ 541.0, et seq.

76. During all times material to this Complaint, Davila was not exempt from receiving FLSA overtime benefits under the commonly-called "companionship exemption" because, inter alia, she did not work in a "private home," as contemplated by the FLSA. *See* 29 U.S.C. § 213(b)(15) and 29 C.F.R. § 552.1, et seq.

77. During all times material to this Complaint, Defendants failed to pay Plaintiff the proper minimum wage rate or for all hours worked as prescribed by 29 U.S.C. § 206.

78. During all times material to this Complaint, Defendants violated the FLSA with respect to Davila by, *inter alia*, failing to compensate her at time-and-one-half her regular rate of pay for any hours worked in excess of forty (40) hours per workweek.

79. During all times material to this complaint, Defendants knew that Davila was not exempt from the minimum wage and overtime obligations imposed by the FLSA. Defendants also knew that they were required to pay Davila at least the applicable minimum wage, plus overtime compensation at a rate of one and one-half their respective regular rates for hours worked in excess of forty (40) hours per workweek. Despite such knowledge, Defendants willfully withheld and failed to pay the minimum wage and overtime compensation to which Davila is entitled.

80. In violating the FLSA, Defendants acted willfully, without a good faith basis and in reckless disregard of clearly applicable FLSA provisions.

81. As a direct and proximate cause of Defendants' conduct, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Davila for the full amount of the required minimum wage rate, an additional equal amount as liquidated damages as well as costs and reasonable attorney fees.

**COUNT II : VIOLATION OF THE OHIO WAGE ACT**

82. Davila restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

83. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek. *See* O.R.C. §§ 4111.01, et seq.

84. During all times material to this Complaint, Trilogy Management, Trilogy Health and The Willows of Bellevue were covered employers required to comply with the Ohio Wage Act's mandates.

85. During all times material to this Complaint, Davila was a covered employee entitled to individual protection of Ohio Wage Act.



86. Defendants violated the Ohio Wage Act with respect to Davila by, *inter alia*, failing to compensate Davila for all hours worked, failing to pay Davila the minimum wage, and failing to pay Davila overtime.

87. In violating the Ohio Wage Act, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio Wage Act provisions.

**COUNT III: WHISTLEBLOWING**

88. Davila restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. During her employment, Davila reported abuse or neglect of a patient when she reported the elopement of a memory care resident.

90. During her employment, Davila reported the violation of federal and state regulations relating to proper care for residents in nursing facilities.

91. Davila's complaints were protected activity under both R.C. § 4113.52(B) and R.C. § 3721.24(A).

92. Defendants retaliated against Davila for reporting patient neglect and federal and state regulation violations by terminating Davila on or about April 26, 2017.

93. Defendants willfully retaliated against Davila in violation of R.C. § 4113.52(B) and R.C. § 3721.24(A) .

94. As a direct and proximate cause of Trilogy Defendants' conduct, Davila suffered and will continue to suffer damages.

95. As a direct and proximate cause of Trilogy Defendants' conduct, Davila is entitled to all damages provided for in R.C. § 4113.52 and R.C. § 3721.24, including liquidated damages, costs and reasonable attorney's fees.

**COUNT IV: DISABILITY DISCRIMINATION**

96. Davila restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



97. Trilogy Management was an employer as defined by R.C. § 4112.01(A)(2).

98. Trilogy Health was an employer as defined by R.C. § 4112.01(A)(2).

99. The Willows at Bellevue was an employer as defined by R.C. § 4112.01(A)(2).

100. Throughout her employment, Davila was fully competent to perform her essential job duties.

101. Defendants violated Ohio Revised Code § 4112.01 *et seq.*by treating Davila differently than other similarly situated employees based on her disability.

102. Defendants violated Ohio Revised Code § 4112.01 *et seq.*by discriminating against Davila due to her disability.

103. Defendants violated Ohio Revised Code § 4112.01 *et seq.*by retaliating against Davila for engaging in protected activity like requesting an accommodation.

104. Defendants violated Ohio Revised Code § 4112.01 *et seq.*by discriminating against Davila due to Davila's use of a cane at work.

105. On or about April 26, 2017, Defendants terminated Davila without just cause.

106. At all times material herein, similarly situated non-disabled employees were not terminated without just cause.

107. Defendants terminated Davila based on her disability.

108. Defendants violated Ohio R.C. § 4112.02 when they terminated Davila based on her disability.

109. As a direct and proximate result of Defendants' conduct, Davila has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

110. As a direct and proximate cause of Defendants' conduct, Davila is entitled to all damages provided for in O.R.C. § 4112.051, including liquidated damages, costs and reasonable attorney's fees. 

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Linda Davila respectfully requests that this Honorable Court grant the following relief:

(a) Awarding to Plaintiff unpaid wages as to be determined at trial together with any liquidated damages allowed by FLSA;

(b) Awarding Plaintiff costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

(c) Awarding Plaintiff such other and further relief as the Court deems just and proper;

(d) An award against Defendants of compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(e) An award of punitive damages against Defendants in an amount in excess of $25,000;

(f) An award of reasonable attorneys fees and non-taxable costs for Plaintiff's claims as allowable under law;

(g) For a judgment against Defendants for all damage, relief, or any other recovery whatsoever;

(h) An award of the taxable costs of this action; and

(i) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Chris P. Wido*

Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Linda Davila*



**JURY DEMAND**

Plaintiff Linda Davila demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**

